```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA

LANDIS CONSTRUCTION, LLC                              CIVIL ACTION

V.                                                    NO. 16-1619

TORUS SPECIALTY INS. COMPANY,                         SECTION "F"
ALTERRA EXCESS & SURPLUS LINES
INS. COMPANY, AND STARR SURPLUS
LINES INS. COMPANY
```

ORDER AND REASONS

Before the Court are three motions, all of which seek the same relief. The defendants, StarStone Specialty Insurance Company (f/k/a Torus Specialty Insurance Company), Starr Surplus Lines Insurance Company, and Evanston Insurance Company (f/k/a Alterra Excess & Surplus Insurance Company) move for judgment on the pleadings to dismiss the plaintiff, Landis Construction's, so-called "Delay Claim" and associated claim for statutory penalties. For the reasons that follow, the motions are DENIED.

**Background**

This is an insurance dispute between a builder, Landis Construction, and the insurers of the building project's owner.

1501 Canal Apartments, LLC is the owner of its namesake building on Canal Street in New Orleans. 1501 Canal hired Landis Construction as a general contractor to perform renovations on the building. The contract required the owner, 1501 Canal, to purchase and maintain property insurance to protect the interests of the

1

builder, Landis Construction. 1501 Canal was also required to name Landis as an "Additional Insured" on the policy.

In compliance with its obligations under the building contract, 1501 Canal obtained builder's risk insurance. Three different insurance companies issued policies that covered a portion of the total coverage amount (the policy limit). StarStone issued a policy covering 37.5% of the policy limit; Starr issued a policy covering 37.5% of the policy limit; and Evanston issued a policy covering the remaining 25% of the policy limit. The insurers agreed that Starstone's would be the lead policy.

The total limit under the three policies was $22,955,000. That amount was divided into sublimits for certain categories of risks. For "physical damage," the sublimit was $17,549,514. The sublimit for "physical damage to Existing Property" was $5,050,486. Finally, the sublimit for "Delay in Completion-Soft Costs" was $355,000. Central to these motions is a disagreement over the sublimit category in which Landis' claims fall.

In January of 2014, during the final stages of the renovation project, a pressure relief valve attached to a water boiler on the roof of the building released. Water flowed from the roof and flooded the elevator machine room and electrical rooms below. Landis was required to repair the water damage, and it incurred costs in doing so. After consulting with its subcontractor in February of 2014, Landis learned that the cost of replacing the

2

bus ducts in the building would be $333,056. This did not include the cost of demolition and removal of the damaged bus ducts or Landis' lost profits and overhead expenses. In June of 2014, the defendant insurers issued a $308,014 payment to Landis to cover repair costs. By July of 2014, however, Landis had incurred expenses totaling $443,092.48. It asked the defendants for an additional partial payment of $138,048.48 to cover the difference between the amount paid and the actual cost of the repairs.

Landis completed performance under the building contract in September of 2014. The owner, 1501 Canal, was obligated under the contract to pay Landis the balance owed for the costs incurred to repair the water damage. In lieu of payment, however, 1501 Canal subrogated and assigned to Landis its insurance claims against the defendants.[1] Landis contends that the net loss it sustained as a result of the water damage is $875,144.21 plus $5,925 for "Claims Preparation Costs." After subtracting the $308,014 already paid, Landis submits that the defendants owe $573,055.21 to satisfy the claim. This amount includes charges for Landis' profits, overhead, and costs during the period in which repairs were made.

After months of back and forth with the insurance adjuster, the defendants agreed to pay a portion of the outstanding balance.

---

[1] Landis also maintains that it was subrogated to 1501 Canal's insurance claims by operation of law because it had completed performance without receiving reimbursement.

On September 9, 2015, the defendants' accountant recommended an additional $22,000 payment for "physical damage" and a payment of $193,037 for "Soft Costs" related to Landis' "Delay Claim." On October 7, 2015, the defendants submitted proof of loss forms to Landis showing an agreed payment of $193,037. Landis executed the forms and returned them on October 12, 2015.

Over 30 days later, on November 13, 2015, Landis received payment of $72,388.94 from Starr. On November 18, 2015, Landis received payment of $48,259.30 from Evanston. Finally, on January 8, 2016, Landis received payment of $72,388.94 from StarStone.[2] The defendants have yet to tender the remaining $22,000 payment for "physical damage" because Landis refused to execute a "Policyholders Release" in exchange. Landis seeks reimbursement for the balance of the costs it incurred to repair the water damage.[3]

The defendants move for dismissal of Landis' claims for lost profits and overhead costs, which make up a substantial portion of

---

[2] In addition to the balance of its insurance claim, Landis seeks penalties for the untimeliness of the defendants' payments.

[3] The exact amount that Landis seeks is unapparent to the Court. In its amended complaint, Landis claims that it was owed $573,055.21 before the defendants made the final payment of $193,037. The difference between the two is 380,018.21. However, later in its amended complaint, Landis claims that it is owed "at least $199,773.42 not including penalties and attorneys' fees." Compare paragraphs 31 and 53 of the amended complaint.

4

the unpaid balance. According to the defendants, that portion is a "Delay Claim" governed by the "Delay in Completion" endorsement attached to the insurance policy. The Delay in Completion endorsement provides: "For the purpose of this endorsement only, the Named Insured, if different from that shown on the policy declarations, shall be as shown on the declarations of this endorsement. There shall be no Additional Insureds hereunder." Directly below, the "Named Insureds" are listed. 1501 Canal is listed, but Landis is not.[4] Simply put, because Landis is not a "Named Insured," the defendants contend the Delay in Completion endorsement explicitly precludes Landis from recovering its lost profits and overhead costs.

Landis responds that it has fallen into a well-placed semantics trap. According to Landis, sometime during the months-long dealings with the insurance adjuster, the adjuster began referring to Landis' claim for lost profits and overhead as the "Delay Claim." Unwittingly, and perhaps ineptly, Landis acquiesced to the technical designation. It too began calling its claim a "Delay Claim." Indeed, Landis repeatedly distinguished between its "Delay Claim" and its "Physical Damage Claim" throughout its original complaint.

---

[4] Landis *is* listed in the policy as an "Additional Insured" – one who is specifically excluded by the Delay in Completion endorsement.

After the defendants filed their motions for judgment on the pleadings, however, Landis realized the technical meaning of "Delay Claim" and sought leave to amend and correct its complaint. Landis' motion to amend was unopposed, and the Court granted it on June 27, 2016. In its amended complaint, Landis submits that the policy clearly includes its claim for lost profits and overhead in the "physical damages" category, not in the Delay in Completion endorsement.[5]

As a result, Landis urges that the "Delay Claim" which the defendants seek to dismiss is misidentified as such. It contends that its claim for lost profits and overhead are included under the coverage terms of the policy for physical damage, and are not subject to the Delay in Completion endorsement. Accordingly, Landis contends that the motions to dismiss are moot. Alternatively, Landis submits that it is subrogated to the rights of 1501 Canal, who *is* a "Named Insured," and thus, its claim for lost profits and overhead is valid even if it constitutes a "Delay Claim" under the Delay in Completion endorsement.

I.

---

[5] For example, the policy includes coverage for the "Total Contract Value," which includes "all wages, expenses, materials, supplies, equipment, change orders plus if declared, *contractor's profit and overhead*, existing structures (when coverage is included by endorsement) and such other charges, all whether provided by the owner, contractors or others, which will become a part of or will be expended on the project. . . ." (emphasis added).

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after both the complaint and answer have been filed. See Fed. R. Civ. P. 12(c). "A motion brought pursuant to [Rule 12(c)] is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002)(quoting Hebert Abstract Co. v. Touchstone Props. Ltd., 914 F.2d 74, 76 (5th Cir. 1990)).

In considering a Rule 12(c), motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" See Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)). Accordingly, the Court considers the insurance policy in resolving these motions.

II.

The defendants' sole basis for partial judgment on the pleadings is that Landis' "Delay Claim" and its associated statutory penalty claim must be dismissed because Landis has no rights under the Delay in Completion endorsement. Since Landis has amended the complaint, however, there no longer exists a "Delay Claim." Thus, accepting the well-pleaded facts in Landis' amended complaint as true, the defendants' motions are obviously moot. Even assuming that Landis has no rights under the Delay in Completion endorsement, Landis now asserts rights under a different provision of the policy that does not exclusively apply to "Named Insureds." To the contrary, Landis now relies on language that explicitly includes coverage for the type of damages it seeks. The defendants have yet to address or contest such rights. Accordingly, the defendants' motions for partial judgment on the pleadings are DENIED.[6]

New Orleans, Louisiana, July 13, 2016

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[6] The defendants filed a last-minute joint reply brief asking the Court to resolve the "Delay Claim" issue because, in its opposition brief, Landis claims it has reserved an alternative theory of recovery under the Delay in Completion endorsement based on its subrogated rights to the Named Insured (1501 Canal). Yet the defendants attempt to raise a new issue not presented in their initial motions: the scope of Landis' subrogation rights. That issue is not currently before the Court, and the Court does not address it here.